# United States Court of Appeals for the Federal Circuit

---

**SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED, THAI PREMIUM PIPE COMPANY LTD.,**
*Plaintiffs-Appellees*

**PACIFIC PIPE PUBLIC COMPANY LIMITED,**
*Plaintiff*

**v.**

**UNITED STATES,**
*Defendant*

**WHEATLAND TUBE COMPANY,**
*Defendant-Appellant*

---

2022-1175

---

Appeal from the United States Court of International Trade in Nos. 1:18-cv-00214-JCG, 1:18-cv-00219-JCG, 1:18-cv-00231-JCG, Judge Jennifer Choe-Groves.

---

Decided:  December 4, 2023

---

JAMES P. DURLING, Curtis, Mallet-Prevost, Colt & Mosle LLP, Washington, DC, argued for plaintiffs-appellee Saha Thai Steel Pipe Public Company Limited. Also represented by JAMES BEATY, DANIEL L. PORTER.

ROBERT GOSSELINK, Trade Pacific PLLC, Washington, DC, for plaintiff-appellee Thai Premium Pipe Company Ltd.

ELIZABETH DRAKE, Schagrin Associates, Washington, DC, argued for defendant-appellant. Also represented by MICHELLE ROSE AVRUTIN, CHRISTOPHER CLOUTIER, WILLIAM ALFRED FENNELL, JEFFREY DAVID GERRISH, LUKE A. MEISNER, ROGER BRIAN SCHAGRIN.

————————————

Before HUGHES, LINN, and STARK, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Defendant-Appellant Wheatland Tube Company appeals a decision from the Court of International Trade affirming a second remand determination by the Department of Commerce calculating certain anti-dumping margins for certain welded carbon steel pipes without any particular market situation adjustments.[1] Because the Court of International Trade properly determined that the agency was not allowed to make a particular market situation adjustment to the cost of production when determining anti-dumping margins, we affirm the trial court's decision to sustain the agency's second remand results.

I

A

Under the Tariff Act of 1930, as amended, Commerce conducts antidumping duty investigations to determine whether goods are being sold at less-than-fair value. *See* 19 U.S.C. § 1673. For this analysis, the agency compares the price at which the merchandise is sold in the

————————————

[1]    The Department of Commerce did not participate in this appeal.

United States (export price) to a "normal value" benchmark. Export price is defined as the price at which the merchandise is first sold in the United States. *See id.* § 1677a(a).

The objective when calculating normal value is to find a value that provides a fair comparison to the export price. *Id.* § 1677b(a). By default, the agency uses the price at which the merchandise is sold for consumption in the exporting country. *See id.* § 1677b(a)(1)(B)(i). The price used is the price "in the ordinary course of trade." *Id.* Section 1677(15), as amended by the Trade Preferences Extension Act of 2015 (TPEA), defines the "ordinary course of trade" as excluding (A) sales in the exporting country that are made at prices below the cost of production ("sales below cost"), (B) certain sales between affiliates, and (C) "[s]ituations in which . . . the particular market situation prevents a proper comparison with the export price or constructed export price." *Id.* § 1677(15).

Sales below cost are excluded from the normal value, and only "the remaining sales of the foreign like product in the ordinary course of trade" are used. § 1677b(b)(1)(B). To determine whether a sale is below cost, the cost of production is calculated according to § 1677b(b)(3) and includes "the cost of [materials, fabrication, and processing of] the foreign like product, during a period which would ordinarily permit the production of that foreign like product in the ordinary course of business." § 1677b(b)(3)(A). Section 1677b(f) also governs the calculation of the cost of production, requiring that "[c]osts shall normally be calculated based on the records of the exporter or producer of the merchandise, if such records . . . reasonably reflect the costs associated with the production and sale of the merchandise." § 1677b(f)(1)(A).

If the agency cannot determine the normal value of the subject merchandise based on price, then § 1677b(e) authorizes the agency to calculate a constructed value based

on costs. TPEA amendments allow the agency to consider a particular market situation (PMS) affecting costs when doing so:

> [I]f a particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade, the administering authority may use another calculation methodology under this part or any other calculation methodology.

§ 1677b(e)(3). However, as we held in *Hyundai Steel Co. v. United States*, 19 F.4th 1346, 1352–55 (Fed. Cir. 2021), the TPEA amendment to § 1677b(e), which deals with calculating constructed value, does not automatically carry over to § 1677b(b), which deals with calculating the cost of production. Thus, our binding case law establishes that the agency cannot use PMS adjustments for cost of production calculations under the statutory framework.

B

Wheatland Tube Company is a domestic producer of various steel pipes. During the 2018 administrative review of imports of circular welded carbon steel pipes (CWPs) from Thailand, Wheatland intervened and alleged that there was a PMS in Thailand that distorted the costs of hot rolled steel coil. Hot rolled steel coil accounts for roughly 80% of the cost of production of CWPs, since the coils are used to make the pipes.

In the underlying antidumping review of CWPs, the agency initially found that respondents Saha Thai Steel and Thai Premium Pipe's costs of production were distorted by the PMS caused by the hot rolled steel coil costs, which prevented the proper comparison of the normal value with export price or constructed value. Then, the

agency determined that it had the authority under the TPEA to account for the PMS in its cost analysis and made upward adjustments to the costs of production for each of the Thai steel companies in this review. This later impacted the antidumping duty rates assigned to each company. The trial court disagreed, finding that Congress intended for PMS adjustments to be available only for calculations of constructed value and not for calculations of costs of production. In so finding, the trial court relied on our decision in *Hyundai Steel*, where we held that the agency could not use PMS adjustments in calculating costs of production. The trial court remanded to the agency to revise its calculations and analysis in accordance with the relevant statutes.

In its first remand determination, the agency continued to find that "a PMS exist[ed] in Thailand that distort[ed] the price of hot rolled coil." J.A. 13. The agency then disagreed with the trial court's finding and continued to use a PMS adjustment when calculating the cost of production, determining that the PMS caused home market sale prices to be outside the ordinary course of trade. J.A. 20. The agency also concluded that the existence of a PMS prevented the proper comparison of normal value based on home market prices with export prices or constructed export prices, and then based the normal value on constructed value. J.A. 20–21.

After the first remand determination, the trial court again found that "Commerce did not follow the statutory framework in this case," and again remanded to the agency to remove the cost-based PMS determination and recalculate the weighted-average dumping margins without a PMS adjustment. J.A. 51. Under protest, in its second remand determination, the agency recalculated the dumping margins without making any PMS adjustments. The CIT upheld this second remand determination.

On appeal, Wheatland seeks to reinstate the agency's first remand determination, where the agency used a PMS adjustment to calculate the cost of production. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

II

"We review a decision of the Court of International Trade evaluating an antidumping determination by Commerce by reapplying the statutory standard of review that the Court of International Trade applied in reviewing the administrative record. We will uphold Commerce's determination unless it is unsupported by substantial evidence on the record or otherwise not in accordance with the law." *Peer Bearing Co.-Changshan v. United States*, 766 F.3d 1396, 1399 (Fed. Cir. 2014) (citation omitted); 19 U.S.C. § 1516a(b)(1)(B)(i).

III

Wheatland argues that this case can be distinguished from *Hyundai Steel* because in that case, we said that 19 U.S.C. § 1677b(a)(1) "specifically gives Commerce the tools to ensure a proper comparison with the export price." 19 F.4th at 1355 (internal quotations omitted). Wheatland further argues that the agency relied on one of the sub-sections of § 1677b(a)(1) to adjust the cost of production upward to account for a PMS by framing it as a constructed value calculation. Appellant's Br. 26. We are not persuaded.

Wheatland ignores the actual holding of *Hyundai Steel*, where we explicitly stated that the amendment authorizing PMS adjustments for constructed value calculations was *not* added to the section of the statute addressing cost of production calculations. 19 F.4th at 1352–53. We thus found that Congress did not intend to authorize the agency to incorporate PMS adjustments for cost of production

calculations. We also explained that "[i]n enacting the TPEA, Congress did not leave a gap for Commerce to fill with regard to adjusting the costs of production. Rather, Congress simply and unambiguously allowed for a PMS adjustment to constructed value but not to the costs of production for purposes of the sales-below-cost test." *Id.* at 1354.

*Hyundai Steel* is indistinguishable from this case and is controlling. That the agency presented its cost of production calculation as a constructed value calculation—by using the phrase "ordinary course of trade" to explain why it incorporated a PMS adjustment—does not change the fact that the statute simply does not authorize PMS adjustments to cost of production calculations. The agency cannot use constructed value language found in § 1677b(e) as a backdoor to slip in a PMS adjustment for cost of production calculations. The trial court correctly found that the agency's second remand determination—removing all PMS adjustments from the cost of production calculation—was consistent with the statutory framework. We thus affirm.

IV

We have considered the rest of Wheatland's arguments and find them unpersuasive. We therefore affirm the Court of International Trade's decision sustaining the agency's second remand determination, which calculated cost of production without any PMS adjustments.

**AFFIRMED**